UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 10-CR-16

RALPH M. TAYLOR,

    Defendant.

## RECOMMENDATION AND ORDER ON DEFENDANT'S MOTIONS

On February 2, 2010, a grand jury sitting in the Eastern District of Wisconsin returned a three-count Indictment naming Ralph M. Taylor ("Taylor") as the defendant. Count One of the Indictment charges Taylor, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, with knowingly possessing two firearms, to wit a Romanian Romarm, model AK-47, 7.62x39mm assault rifle, bearing serial number FM1681-74 and a Remington-Rand, model US Army, .45 caliber pistol, bearing serial number 1564010, all in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Two of the indictment charges Taylor with knowingly and intentionally possessing with the intent to distribute a mixture and substance containing cocaine base in the form of "crack" cocaine, a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Count Three of the indictment charges Taylor with unlawfully and knowingly using and carrying the firearms listed in Count One of the Indictment in furtherance of the drug trafficking offense as stated in Count Two of the Indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(i). This case is currently assigned to the Honorable Lynn Adelman for trial and to this court for pre-trial processing.

Taylor has filed three pre-trial motions: a Motion to Dismiss the Indictment; a Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment; and, a Motion to Compel the

Disclosure of a Confidential Informant's Identity. Taylor's motions are now fully briefed and are ready for resolution. For the reasons which follow, it will be recommended that Taylor's motion to dismiss the indictment and his motion to suppress be denied. Taylor's motion to compel the disclosure of the confidential informant's identity will be granted in part and denied in part.

## I. Background

Included as an exhibit to the defendant's Motion to Dismiss is a sworn statement by Milwaukee Police Department Officer Brent Michichoski regarding the events surrounding Taylor's arrest. Because the parties' briefs treat the facts as related by Officer Michichoski to be accurate, this court assumes, without deciding, that the facts at issue are as related in Officer Michichoski's statement. Specifically, Officer Michichoski states that Taylor was arrested on January 1, 2010, after law enforcement officers executed a no-knock search warrant at 3839 N. 10th Street, Milwaukee, Wisconsin. Officer Michichoski states that a search of the residence at 3839 N. 10th St. revealed a quantity of suspected cocaine base and the two weapons that are specified in the Indictment. Officer Michichoski further states that law enforcement officers recovered mail and men's clothes linking Ralph Taylor to the residence and, in particular, to the locations in the residence where the crack cocaine was discovered.

Taylor attached additional exhibits to his Motion to Dismiss. Based on this court's review of those exhibits as well as the parties' briefs, the following facts are assumed to be true for purposes of the defendant's motions. On January 4, 2010, the State of Wisconsin filed a criminal complaint in Milwaukee County Circuit Court alleging that, based on the events described in Officer Michichoski's exhibit, Taylor unlawfully possessed a distribution quantity of crack cocaine. The State further alleged in the complaint that, on January 1, 2010, Taylor, a convicted felon, unlawfully possessed firearms. Following the issuance of the complaint, Taylor appeared in Milwaukee County Circuit Court, at

which time the court set bond in the amount of $1,000. (*See* Def.'s Mot. Dismiss, Ex. 2.) By January 7, 2010, Taylor was released on bond. (*See id.*)

On February 5, 2010, the State moved to dismiss its complaint against Taylor. (*See id.*) As noted above, the indictment was returned by the grand jury on February 2, 2010. Following the return of the indictment, an arrest warrant was issued for Taylor. (*See* Def.'s Mot. Dismiss, Ex. 4.) On February 12, 2010, a Milwaukee County Circuit Court judge granted the State's motion to dismiss the complaint. (*See* Def.'s Mot. Dismiss, Ex 2.)

On February 28, 2010, Taylor was arrested on the federal warrant. (*See* Def.'s Mot. Dismiss, Ex. 5.) However, it was not until March 26, 2010, that Taylor first appeared before a magistrate judge. (*See* Def.'s Mot. Dismiss, Ex. 3.) At that time, the magistrate judge issued an order setting Taylor's bond at $1,000. (*See* Def.'s Mot. Dismiss, Ex. 4.) Taylor posted bond and was released from federal custody. (*Id.*)

## II. Discussion

*A. Motion to Dismiss the Indictment*

Taylor's Motion to Dismiss the Indictment is predicated on the twenty-six-day period that ran between Taylor's arrest on the federal warrant and his arraignment before a magistrate judge. Taylor points to the text of Federal Rule of Criminal Procedure 5(a)(1)(A), which requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ." Taylor contends that his twenty-six-day confinement left him "ignored by the criminal justice system" and without "the access to counsel contemplated by the Sixth Amendment" or "the setting of the reasonable bail required by the Eighth Amendment." (Def.'s Mot. Dismiss at 5.) Taylor notes that the government's conduct negatively impacted his client and this

3

court. Based on the above, Taylor asks this court to exercise its supervisory powers by dismissing the indictment against Taylor.

In response to the defendant's motion, the government states that it "concedes error in detaining the defendant without promptly bringing him before a magistrate in violation of Rule 5 . . . ." (Gov't's Br. at 4.) That said, the government argues that dismissal of the indictment is not the appropriate remedy in this instance. In support of its position, the government cites to a number of cases that hold that the remedy for the government's violation of Rule 5(a) "is not dismissal of the indictment." *United States v. Dyer*, 325 F.3d 464, 470, n.2 (3d Cir. 2003). *See also United States v. DiGregorio*, 695 F. Supp. 630, 634 (S.D.N.Y. 1992)(denying a motion to dismiss an indictment based upon a violation of Rule 5(a) where the defendants were not brought to a judicial officer of any kind for five months after their arrests.). Rather, the government asserts that a proper remedy for the government's violation of Rule 5(a) might include "crediting his sentencing for the 26 days spent in custody if he is convicted of the charges in the indictment." (Gov't's Br. at 5.)

The government further contends that the supervisory powers of the federal courts should not be invoked in this instance. The government agrees that the supervisory powers of the courts are supposed to remedy a violation of recognized rights. But the government contends that "[s]uch powers . . . must be used sparingly, *United States v. Santana*, 6 F.3d 1, 10 (1st Cir. 1993), and are typically reserved for conduct that shocks the conscience, *Rochin v. California*, 342 U.S. 165, 172 (1952)." In arguing that the instant case does not call for an exercise of this court's supervisory powers, the government asserts: (1) the error in not producing Taylor was inadvertent; (2) there is no pattern to the government's conduct; (3) there are no aggravating circumstances justifying dismissal; (4) Taylor's detention will not adversely affect his counsel's representation of him; (5) the error will

4

not denigrate the court system because the evidence in the case was not obtained in the twenty-six day time period that Taylor was incarcerated without appearing before a magistrate judge.

In his reply, the defendant asserts that he does not claim that his rights were intentionally violated. Nevertheless, he "asserts that the Government minimizes its relevant wrong by reducing it to a mere violation of Rule 5 and offering that the matter will effectively resolve itself upon the 'crediting [of Taylor's] sentence for the 26 days spent in custody.'" (Def.'s Reply at 3.) Indeed, the defendant argues that his claim is not that the indictment should be dismissed on the basis of a technical Rule 5 violation. Instead, "his complaint is that he was wrongfully detained for nearly one month. The Rule 5 violation, while meaningful, is merely incidental to the greater wrong." (Def.'s Reply at 4.)

The events that occurred here are most regrettable. Indeed, it may very well be that Taylor has a monetary remedy available to him under 42 U.S.C. § 1983, or some other statute, for his alleged "wrongful detention." But, dismissal of the indictment for what both parties agree was an unintentional human error would, in my opinion, be an inappropriate step to take under either Rule 5(a) or this court's supervisory authority or Fed. R. Crim. P. 5(a).

Invocation of the court's supervisory authority is appropriate in order to: (1) implement a remedy for a violation of recognized rights, (2) preserve judicial integrity by ensuring the conviction rests on appropriate considerations validly before the jury, and (3) deter illegal conduct. *United States v. Hastings*, 461 U.S. 499, 505 (1983). Such powers, however, are to be used sparingly. "Potent elixers should not be casually dispensed." *United States v. Santana*, 6 F.3d 1, 10 (1st Cir. 1993). *See United States v. Van Engel*, 15 F.3d 623, 631 (7th Cir. 1993) (" A federal judge is not authorized to punish the misconduct of a prosecutor by letting the defendant walk, unless the misconduct not only

violated the defendant's rights but also prejudiced his defense, and neither condition is satisfied here.").

There is no suggestion that what here occurred was intentional; nor is there any indication that during his continued detention Taylor made statements against his interest, thereby rendering the government's case against him stronger. In other words, Taylor's defense has not been prejudiced by his detention. That having been said, the events that here occurred have not gone unnoticed by the judges in this district. The government would be well advised to monitor more closely the custodial status of those individuals whom it wishes to prosecute federally so that the most unfortunate events that here occurred do not repeat themselves.[1]

As noted above, the defendant's motion seeks a dismissal of the indictment under the court's supervisory authority. That said, the Rule 5 violation is the predicate to the defendant's claim and some discussion regarding a party's remedies following a Rule 5 violation is appropriate. Based on this court's review of the available case law, the appropriate remedy for a violation of Rule 5(a) may consist of the suppression of prejudicial statements obtained during the prearraignment delay. *See DiGregorio*, 795 F. Supp. at 634. *See also United States v. Bethea*, Case No. 07-CR-3, 2007 U.S. Dist. LEXIS 76108, *4 (October 12, 2007) (denying a defendant's motion to dismiss an indictment as a sanction for a Rule 5(a) violation). Or it may consist of a twenty-six-day credit to the defendant's sentence, as the government suggests. But the appropriate remedy under Fed. R. Crim. P. 5(a) for an unintentional, twenty-six-day delay in bringing a defendant in custody before a magistrate judge is not dismissal of the indictment.

In conclusion, it will be recommended that the defendant's motion to dismiss the indictment be denied.

---

[1] Of course, if such events do repeat themselves, such repetition could demonstrate a pattern and thereby render it more likely that the court will invoke its supervisory powers to remedy such problem.

6

*B. Motion to Suppress*

Taylor moves the court for an order suppressing any and all evidence obtained directly or derivatively from the execution of the warrant on January 1, 2010, at 3839 North Tenth Street in Milwaukee, Wisconsin. (Def.'s Mot. Supp. at 1.) Taylor contends that "the search warrant at issue in this case is void for its having been issued by a court commissioner lacking authority to perform judicial functions including, for purposes of the Fourth Amendment, the issuance of warrants." (*Id.* at 2.)

Taylor reasons that an amendment to Wisconsin's constitution in 1977 "had the effect of divesting court commissioners of their earlier authority to perform certain judicial functions . . . ." (*Id.*) The pertinent provision of the Wisconsin Constitution provides as follows:

> The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature under section 14.

Wis. Const. Art. VII, § 2. After citing to a Wisconsin Supreme Court case where the court stated that "[a] judicial court commissioner . . . does not constitute a court," *State ex. Rel. Perry v. Wolke*, 71 Wis. 2d 100, 104 (1976), Taylor pieces all of the above together to conclude that the constitutional provision does not "provide for the exercise of judicial powers by court commissioners . . . ." (Def.'s Mot. Supp. Reply Br. at 6.)

Notably, Taylor's reply brief directs my attention to a decision issued by the Honorable Lynn Adelman (to whom the instant case is assigned for trial) in *United States v. Diaz*, Case No. 09-CR-302, 2010 WL 545852 (E.D. Wis. Feb 12, 2010). In *Diaz*, Judge Adelman considered and rejected the very same arguments concerning the legality under the Fourth Amendment of Wisconsin court commissioners issuing search warrants. Judge Adelman issued his decision after receiving a recommendation from Magistrate Judge Goodstein opining that court commissioners could issue

search warrants in Wisconsin without running afoul of the Fourth Amendment to the United States Constitution.

Taylor contends that Judge Adelman in *Diaz* misapprehended the issue that is now raised by Taylor in his motion. I am not so persuaded. To the contrary, I have reviewed Judge Adelman's decision in *Diaz* as well as Judge Goodstein's recommendation in that case. I find that both set forth the reasons why a search warrant issued by a court commissioner in Wisconsin is in keeping with the mandates of the Fourth Amendment. In particular, Judge Adelman noted that the only applicable law on this question is Federal law and proceeded to state as follows:

> In the present case, defendant makes no allegation that Wisconsin court commissioners [are not neutral and detached, as required by the Fourth Amendment].... [H]e cites no authority for the proposition that the Fourth Amendment contains a third requirement, i.e., that the issuing official be authorized to act under state law. Nor, under the circumstances of this case, can I conclude that any such requirement renders the instant search warrant void.... [I]t is undisputed that whatever the precise scope of [court commissioner's] authority under the Wisconsin constitution, court commissioners are a part of the Wisconsin judicial branch, *see* Wis. Sup. Ct. R. ch. 75. To the extent that there may be, implicit in the concept of a neutral and detached magistrate, a requirement that the issuing official have some cognizable legal authority to issue warrants . . . that requirement is met here as well, as the Wisconsin legislature has specifically provided that circuit court commissioners may issue search warrants, *See* Wis. Stat. § 757.69(1)(b). This is not a situation where the officer obtained a warrant from someone wholly without legal authority.

*Diaz*, 2010 WL 545852, *2. Simply put, I agree with Judge Adelman's decision in *Diaz*. Consequently, it will be recommended that the defendant's Motion to Suppress be denied.

*C. Motion to Compel*

Taylor has also filed a motion seeking an order from the court directing the Government "to reveal the identity of a confidential informant . . . ." (Def.'s Mot. Compel at 1.) Taylor states in his motion that "discovery . . . indicates that the search warrant [at issue in this proceeding] resulted from an informant's tip stating that the informant had previously visited the relevant residence and, while there, observed Taylor conducting drug transactions." (*Id.* at 2.) Taylor continues by stating that his

8

"request for the compelled disclosure of the informant's identity is conditioned on the assumption that the government, at trial, might in one form or another wish to present evidence provided to it by the informant." (*Id.* at 1-2.)

The government responds by stating that, "[i]n accord with the law of this circuit, the identity of the informant will be disclosed one week prior to trial if the informant's testimony is sought to be introduced at trial by the government." (Gov't's Br. at 7.) Unfortunately, the government does not cite to any circuit case law to support such assertion.

It is well-established that the government has a limited privilege to withhold the identity of a confidential informant from a criminal defendant. *Roviaro v. United States*, 353 U.S. 53, 60 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59.

When determining whether to compel disclosure of an informant's identity, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. Under this balancing test, the privilege will not apply "[w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused." *Id.* at 60-61. And, the burden is on the defendant to establish that disclosure is "relevant and helpful to [his] defense" or "essential to fair determination of a cause." *United States v. Jefferson*, 252 F.3d 937, 941 (7th Cir. 2001); *see also United States v. Bender*, 5 F.3d 267, 270 (7th Cir. 1993) (stating that where the public interest in protecting the free flow of information is strong, the defendant must demonstrate a "genuine need" for disclosure). Furthermore, if a defendant meets this burden, the government's obligation to disclose the identity of the informant

9

does not hinge on whether the witness will testify at trial. *See Banks v. Dretke*, 540 U.S. 668, 697 (2004).

To be sure, the government often seeks to maintain the anonymity of an informant out of a concern for his or her safety. This is especially true where the defendants have been charged with a drug-related offense. As the Seventh Circuit Court of Appeals noted in *United States v. Bender*: "Understandably, not many people want to become police informants in light of the violence within the drug subculture. Drug dealers are not known for treating informers with compassion." 5 F.3d at 270.

Moreover, "'[w]hen the informant is a mere tipster, rather than a participant or an eye witness to the event in question, disclosure will not be required.'" *Id.* (quoting *United States v. Andrus*, 775 F.2d 825, 842 (7th Cir. 1985)). In *Bender*, the Seventh Circuit held that the informant "was not a transactional witness, that is, he or she was not an active participant in the investigation leading to arrest." 5 F.3d at 270. Rather, the informant was a "tipster." Relying upon the fact that the "criminal activity the informant had witnessed did not constitute the charges against Bender," the court held that disclosure of the tipster's identity was not required. *Id.* If, however, the informant is "the sole participant, other than the accused, in the transaction charged," and "[is] the only witness in the position to amplify or contradict the testimony of government witnesses," the informant's identity must be disclosed. *Rovario*, 353 U.S. at 64; *see id*. at 55 (stating that the defendant in *Rovario* engaged in a one-on-one transaction with the informant, and thus, the informant "had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged").

10

After reviewing the parties' submissions on this issue, I am persuaded that the government should be required to "fish or cut bait" on whether to call the informant as a witness at trial. The final pretrial in this case is scheduled for May 21, 2010, with the trial scheduled to commence on June 1, 2010. The government should certainly know by the final pretrial whether it intends to call the informant as a witness at trial. Consequently, the government will be ordered to provide the identity of the informant no later than May 21, 2010, if it intends to call such informant as a witness at trial. After all, just as the government is entitled to prepare its case for trial, so too is the defendant.

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's Motion to Dismiss the Indictment be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment be **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's Motion to Compel Disclosure of a Confidential Informant's Identity be **GRANTED IN PART** and **DENIED IN PART;** specifically, the government must disclose to defense counsel the identity of the confidential informant no later than May 21, 2010, if the government intends to call such informant as a witness at trial;

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C), and Federal Rule of Civil Procedure 72(a) and (b)(2) (as amended effective December 1, 2009), whereby written objections to any order or recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

**SO ORDERED** this 7th day of May 2010 at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge