# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   **v.**                                             **Case No. 10-CR-16**

**RALPH TAYLOR**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Ralph Taylor with possessing firearms as a felon, 18 U.S.C. § 922(g)(1), possessing crack cocaine with intent to distribute, 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and possessing firearms in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c). Defendant filed three pre-trial motions: a motion to dismiss based on the government's delay in bringing him before a magistrate judge after his arrest on a federal warrant; a motion to suppress evidence seized from his residence pursuant to an allegedly void search warrant; and a motion to compel disclosure of the identity of a confidential informant.

The magistrate judge handling pre-trial proceedings in this case recommended that the motions to dismiss and suppress be denied, and granted in part and denied in part the motion for disclosure. Defendant objects regarding all three motions. I review the magistrate judge's recommendation on the (dispositive) motions to dismiss and suppress de novo, see Fed. R. Crim. P. 59(b), and his order on the (non-dispositive) motion to compel for clear error, see Fed. R. Crim. P. 59(a).

## I. MOTION TO DISMISS

The parties essentially stipulated to the facts relevant to defendant's motion to dismiss. The magistrate judge presented a detailed recitation of events in his recommendation; I present a more abbreviated version here.

Milwaukee police officers arrested defendant on January 1, 2010, after seizing a quantity of suspected cocaine base and two firearms during the execution of a search warrant at his residence. On January 4, 2010, the State of Wisconsin filed a criminal complaint in Milwaukee County Circuit Court charging defendant with unlawful possession of the drugs and guns. The Circuit Court set bond, and defendant was released from state custody on January 7, 2010.

The government obtained the instant indictment on February 2, 2010, and a warrant for defendant's arrest issued on February 4, 2010. On February 5, 2010, presumably in response to the federal indictment, the State moved to dismiss its complaint against defendant, and on February 12, 2010, a Milwaukee County Circuit Court judge granted the State's motion. On February 28, 2010, defendant was arrested on the federal warrant; however, for reasons that are not entirely clear, he did not appear before a magistrate judge until March 26, 2010.[1] On that date, the magistrate judge set bond, permitting defendant's release from federal custody.

Defendant moves to dismiss the federal indictment based on the delay in bringing him before a magistrate judge. Under Fed. R. Crim. P. 5(a)(1)(A), "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a

---

[1] On March 18, 2010, the government obtained a writ of habeas corpus ad prosequendum to secure defendant's appearance in court. As defendant was in federal custody at the time, no such writ was needed.

2

statute provides otherwise." The government concedes that it failed to heed Rule 5(a) in this case but argues that dismissal is not the appropriate sanction.

Delay in presenting a defendant before a magistrate judge may result in the suppression of statements made during the period of delay (if outside the six hour "safe harbor" period provided by 18 U.S.C. § 3501(c)), e.g., United States v. Kirkland, 567 F.3d 316, 320 (7th Cir. 2009), cert. denied, 130 S. Ct. 1120 (2010) (citing Corley v. United States, 129 S. Ct. 1558, 1571 (2009)), but courts have generally held that such delay does not warrant dismissal, e.g., United States v. Dyer, 325 F.3d 464, 470 n.2 (3d Cir. 2003); United States v. Fernandez, 500 F. Supp. 2d 661, 667 (W.D. Tex. 2006); see also United States v. Savchenko, 201 F.R.D. 503, 506-07 (S.D. Cal. 2001) ("While some cases suggest that there are circumstances of abuse or misuse of the process that may lead to pre-indictment dismissal of the charges, standing alone, the matter of delay in presentment of a defendant to a magistrate judge following arrest is not, in and of itself, sufficient.") (footnote omitted).

Defendant asks the court to use its supervisory powers to dismiss the indictment in his case. He concedes that no one acted intentionally or willfully in denying him access to the court, and he points to no specific prejudice to his ability to defend the case based on the delay. Rather, he contends that dismissal is warranted primarily to send a message to the government.

The Supreme Court has recognized that, in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. United States v. Hasting, 461 U.S. 499, 505 (1983). "The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on

3

appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct." Id. (internal citations omitted). But such powers are to be used sparingly. See, e.g., United States v. Stokes, 124 F.3d 39, 46 (1st Cir. 1997). As the Seventh Circuit has explained, a "federal judge is not authorized to punish the misconduct of a prosecutor by letting the defendant walk, unless the misconduct not only violated the defendant's rights but also prejudiced his defense." United States v. Van Engel, 15 F.3d 623, 631 (7th Cir. 1993), abrogation on other grounds recognized by United States v. Canoy, 38 F.3d 893, 902 (7th Cir. 1994); see also Hasting, 461 U.S. at 506 (holding that supervisory powers may not be used to remedy harmless errors).

Defendant argues that the focus should be on the violation of his rights rather than the absence of prejudice, but Van Engel and Hasting require the court to consider whether the violation was harmful. Defendant also attempts to distinguish Van Engel, arguing that it involved an ineffective assistance of counsel claim, which necessarily requires a showing of prejudice. See Strickland v. Washington, 466 U.S. 668, 687 (1984). However, the prejudice requirement is not confined to cases involving ineffective assistance. See, e.g., Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988) (holding that a federal court may not invoke its supervisory powers to dismiss an indictment for prosecutorial misconduct before the grand jury where the misconduct did not prejudice the defendant); United States v. Casas, 425 F.3d 23, 47-48 (1st Cir. 2005) (holding that a court may invoke its supervisory powers only where there is a nexus between the improper prosecutorial practice and prejudice to the defendant); United States v. Fernandez, 388 F.3d 1199, 1239 (9th Cir. 2004) (holding that to justify the exercise of the court's supervisory powers prosecutorial misconduct must be flagrant and cause substantial prejudice to the defendant).

4

Defendant does not even allege that his defense has been prejudiced. So far as the record shows, defendant made no statement and the government obtained no additional evidence during the period of delay; nor does it appear that the delay resulted in the loss of evidence valuable to the defense. Cf. United States v. Diaz, 156 Fed. Appx. 223, 224 (11th Cir. 2005) (considering, but ultimately denying, a motion to dismiss based on the government's delay in presenting the defendant to a magistrate judge, during which it repatriated potential defense witnesses). Further, because the grand jury handed up the indictment prior to defendant's arrest, the delay did not result in defendant's continued detention in the absence of a probable cause determination. Finally, to the extent that invocation of the court's supervisory powers might be appropriate to punish the government based on repeated violations of Rule 5, defendant presents no evidence of such a pattern.

Defendant points out that dismissal of the federal indictment would not constitute a windfall here, as the State of Wisconsin could reinstate charges. But he cites no case holding that the existence of concurrent state and federal jurisdiction obviates the need to show prejudice, and I have found none.[2] Nor would dismissal under these circumstances be warranted to vindicate the court's interest in satisfying its own standards, as defendant also suggests.[3] Therefore, for these reasons and those stated by the magistrate judge, the motion to dismiss will be denied.

---

[2] The government notes that state charges would not be equivalent to federal charges, as there does not appear to be a state analog to § 924(c), which requires a consecutive sentence of 5 years to life.

[3] The magistrate judge, in permitting defendant's release on bond, may have considered the delay in presentment. The government sought detention, and the charges defendant faces create a presumption that no conditions will ensure the safety of the community and his appearance in court. 18 U.S.C. § 3142(e).

5

## II. MOTION TO SUPPRESS

In his motion to suppress, defendant argues that the state court commissioner who issued the search warrant in this case lacked authority to do so under the Wisconsin constitution, rendering the warrant void. Defendant notes that when Wisconsin amended its state constitution in 1977, creating a unified court system, it removed from the document any specific reference to "court commissioners." Because of this amendment, defendant argues that court commissioners may not engage in judicial functions such as issuing warrants. I considered and rejected an identical argument in United States v. Diaz, No. 09-CR-302, 2010 WL 545852 (E.D. Wis. Feb. 12, 2010).

As I explained in Diaz, I need not, in order to address defendant's motion, determine whether the court commissioner acted in accordance with Wisconsin law. Rather, the issue is whether the warrant satisfied the Fourth Amendment. Id. at *1 (citing Virginia v. Moore, 553 U.S. 164 (2008) (holding that a violation of state law did not spoil an arrest valid under the Fourth Amendment)). "'In federal court, when the Exclusionary Rule is at issue, the only applicable law is the Federal Constitution.'" Id. (quoting United States v. Franklin, 284 Fed. Appx. 266, 269 (6th Cir. 2008) and citing United States v. Brewer, 588 F.3d 1165, 1172 (8th Cir. 2009); Bowling v. Rector, 584 F.3d 956, 968 (10th Cir. 2009); United States v. Sims, 553 F.3d 580, 585 (7th Cir. 2009); United States v. Sanderson, 298 Fed. Appx. 619, 620 (9th Cir. 2008); United States v. Porter, 654 F. Supp.2d 938, 941-42 (E.D. Ark. 2009)).

In Shadwick v. City of Tampa, 407 U.S. 345, 350 (1972), the Supreme Court set forth the applicable, federal constitutional standard for warrant-issuing officials:

> The substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party. The warrant traditionally has represented an independent assurance that a search and arrest will not proceed without

6

> probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search. If . . . detachment and capacity . . . conjoin, the magistrate has satisfied the Fourth Amendment's purpose.

Id. at 350 (internal citations and quote marks omitted).

Defendant makes no argument that the court commissioner who issued the warrant in his case did not meet this standard. Rather, he argues that the "commissioner is not a judge in that neither federal law nor the laws of Wisconsin authorize such a person to exercise judicial power." (Def.'s Objec. [R. 19] at 6.) He argues that, for purposes of the Fourth Amendment, the commissioner is equivalent to the proverbial man on the street. However, defendant cites no authority supporting the notion that the Fourth Amendment contains a requirement that the issuing official be authorized to act under state law. Further, in Shadwick, 407 U.S. at 345-46, the Court held that municipal court clerks, who lacked formal legal training but were nevertheless authorized by city charter to issue arrest warrants, qualified as "neutral and detached magistrates" for purposes of Fourth Amendment; in other words, the issuing official need not have the title of "judge." Finally, as I explained in Diaz, court commissioners are not just random citizens; rather, they are part of the Wisconsin judicial branch, see Wis. Sup. Ct. R. ch. 75, specifically authorized by statute to issue search warrants, see Wis. Stat. § 757.69(1)(b). Diaz, 2010 WL 545852, at *2.

Defendant acknowledges § 757.69(1)(b) but argues that the statute is void because it purports to vest judicial power outside the offices in which it constitutionally must reside. However, he cites no Wisconsin case supporting the argument; rather, he relies on a Supreme Court case addressing Article III of the United States Constitution. See Northern Pipeline

7

Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). I am aware of no authority supporting the proposition that Wis. Stat. § 757.69(1)(b) is void. Indeed, as Magistrate Judge Goodstein noted in his report and recommendation in Diaz, the drafting history of the pertinent constitutional provision supports the notion that the legislature could continue to authorize court commissioners. United States v. Diaz, No. 09-CR-302, slip. op. at 4 (E.D. Wis. Jan. 15, 2010) (Report and Recommendation on Motion to Suppress) ("The section authorizes the legislature to create an appointive office of county court commissioner. The constitutional authorization is repealed; the office continues under statute law (e.g. section 252.14).").

Finally, defendant takes issue with my holding in Diaz that, even if Wisconsin court commissioners cannot issue warrants under the Fourth Amendment, suppression would not be the appropriate remedy. The primary purpose of the exclusionary rule is to deter police misconduct, see United States v. Leon, 468 U.S. 897, 906 (1984), and given the novel nature of defendant's claim and the long-standing Wisconsin practice of allowing court commissioners to issue warrants, that purpose would not be served by suppression. Diaz, 2010 WL 545852, at *3. Defendant argues that if the court commissioner lacked authority to issue a search warrant, the piece of paper she signed constituted something other than a "warrant" upon which the police could rely in good faith. Judge Crabb considered and rejected a similar argument in Thompson v. Rock County, 648 F. Supp. 861 (W.D. Wis. 1986), and I find her analysis persuasive.

In Thompson, the plaintiff brought a § 1983 action alleging that he had been arrested and his residence searched pursuant to warrants that were invalid because they had been issued by court commissioners who had not been duly authorized to issue warrants. Id. at 863. The plaintiff noted that while the circuit court judges for Rock County had appointed court

8

commissioners, the judges had not specifically authorized the commissioners to issue warrants, as state law then required. Id. Judge Crabb noted that, under Wisconsin law, the warrants issued by the court commissioners were invalid in fact. Id. at 868.

> The fact that the warrants were issued invalidly, however, does not end the inquiry into whether their issuance and execution violated plaintiff's constitutional rights. The United States Supreme Court, in Baker v. McCollan, 443 U.S. 137 (1979), found no unconstitutional deprivation of liberty where the plaintiff was arrested pursuant to a warrant that named him, even though the person actually sought by the police was the plaintiff's brother. Id. at 143. The Court reasoned that since the plaintiff had been arrested "pursuant to a facially valid warrant," no deprivation of a constitutional right had occurred. Id.
>
> The Court of Appeals for the Seventh Circuit has stated that if a warrant "is valid on its face, its execution against the person named in the warrant does not violate the Fourth Amendment." Johnson v. Miller, 680 F.2d 39, 41 (7th Cir. 1982). Conversely, warrants not valid on their face, as where identification of the person named is deficient, do give rise to an unconstitutional deprivation of liberty. Powe v. City of Chicago, 664 F.2d 639, 644 (7th Cir.1981).
>
> Other circuit courts of appeals also have concluded that no deprivation of a constitutional right may be predicated upon the execution of a facially valid warrant. See, e.g., Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1434 (10th Cir. 1984), vacated and remanded on other grounds, 106 S. Ct. 40 (1985) (no constitutional violation for arrest "on a warrant that appears on its face to be valid but later proves deficient"); Krohn v. United States, 742 F.2d 24, 26-27 (1st Cir. 1984) (no constitutional violation in execution of a facially valid warrant which is not known to be invalid). Moreover, as the Court of Appeals for the Ninth Circuit pointed out:
>
>> According to the Restatement (Second) of Torts, an arrest is privileged if it is made pursuant to a warrant which is regular in form and which reasonably appears to have been issued by a court with jurisdiction. See Restatement (Second) of Torts, §§ 122-24 (1965); accord 32 Am. Jur. 2d False Imprisonment § 81 (1982).
>
> Arnsberg v. United States, 757 F.2d 971, 979 (9th Cir.1985), cert. denied, 106 S. Ct. 1183 (1986).

Id. at 868.

Judge Crabb noted that while the relevant case-law primarily addressed defects in the

9

identification of the person sought, the Restatement (Second) of Torts indicated that "a warrant may be said to be facially valid 'if it reasonably appears to have been issued by a court with jurisdiction.'" Id. at 869 (quoting Arnsberg, 757 F.2d at 979). She therefore concluded:

> I am persuaded that the warrants issued by the court commissioners for plaintiff's arrests and for the search of the residence were facially valid. There is no claim of any defect in the warrants other than the lack of authority vested in the court commissioners. The commissioners' lack of authority to issue the warrants was not apparent from the face of the warrants themselves. Rather, the court commissioners had been appointed by the circuit judges and were acting as judicial officers with apparent authority to do so. Under these circumstances, the warrants on their face would appear reasonably to have been issued by persons empowered to do so. Because these warrants were valid on their face, their "execution against the person named in the warrant does not violate the Fourth Amendment." Johnson, 680 F.2d at 41. Therefore, I conclude that plaintiff suffered no deprivation of a constitutionally protected right.

Id.

In this case, too, the warrant appears valid on its face. Nothing in the warrant or the manner of its issuance would suggest to a reasonably well-trained Wisconsin law enforcement officer that the warrant was void.

Defendant argues that while the good faith doctrine protects mistakes of fact, see, e.g., United States v. Dowthard, 500 F.3d 567, 569 (7th Cir. 2007), it does not shelter mistakes of law. But the case on which he relies involved an officer's mistaken belief about a state traffic law, United States v. McDonald, 453 F.3d 958, 961-62 (7th Cir. 2006); he cites no case holding that an officer's reasonable belief that a judicial official may issue a warrant renders Leon inapplicable.[4] As in Thompson, the instant warrant appears valid on its face, providing no basis

---

[4]For the sake of completeness, I note that in United States v. Scott, 260 F.3d 512 (6th Cir. 2001), the court suppressed evidence seized pursuant to a warrant issued by a retired judge. However, as I explained in Diaz, Scott is a pre-Moore case. Diaz, 2010 WL 545852, at *3. In Moore, the Supreme Court clarified that violations of state law do not require suppression under the Fourth Amendment. Further, the officers in Scott could have presented

10

for the officers to question it.

As I stated in Diaz, suppression of evidence should be a last resort, not the first impulse. Hudson v. Michigan, 547 U.S. 586, 591 (2006). The exclusionary rule should be applied only where its remedial objectives are most efficaciously served, that is, where its deterrence benefits outweigh its substantial social costs. Id. Under these circumstances, the balance does not weigh in favor of exclusion. Diaz, 2010 WL 545852, at *3. Therefore, for the foregoing reasons, those stated by the magistrate judge in the present case, and those stated in my decision and the magistrate judge's recommendation in Diaz, the motion will be denied.

### III. MOTION FOR DISCLOSURE

Police obtained the search warrant in this case based on observations made by a confidential informant, and in his final motion defendant sought disclosure of the informant's identity. The government enjoys a limited privilege to withhold the identity of an informant from the defendant. Roviaro v. United States, 353 U.S. 53, 59 (1957). The privilege will give way if the defendant shows that "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61. In determining whether to order disclosure of an informant, the "court must balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" United States v. Jefferson, 252 F.3d 937, 940-41 (7th Cir. 2001) (quoting Roviaro, 353 U.S. at 62). The Seventh Circuit has held that when the informant is a mere tipster, as opposed to a participant in the criminal activity (i.e.,

---

the warrant application to an active, available judge but instead chose to present the warrant to a retired judge. In the present case, as in Diaz, there is no evidence that the officer chose to submit the application to a plainly unauthorized person, so Scott is also distinguishable on its facts. Diaz, 2010 WL 545852, at *3 n.3.

11

a transactional witness), the government generally need not disclose his identity. See United States v. Bender, 5 F.3d 267, 270 (7th Cir. 1993); see also United States v. Hornick, 815 F.2d 1156, 1158 (7th Cir. 1987) (denying motion for disclosure of informant used to obtain a search warrant); U.S. ex rel. Cunningham v. DeRobertis, 719 F.2d 892, 895 (7th Cir. 1983) ("Under McCray v. Illinois, 386 U.S. 300 (1967), there is no constitutional right to the disclosure of the identity of an informant whose information leads to a finding of probable cause.").

Defendant requested that, if it intended to present testimony from the informant at trial, the government be directed to immediately disclose his/her identity. The magistrate judge ordered that the government identify the informant by May 21, 2010 (the scheduled final pre-trial date) if it intended to call him/her at trial. In his objections, defendant argues that, absent an unequivocal statement that the government will not call the informant, disclosure should be immediate. The government should not, he contends, be permitted to keep its options open at the expense of his ability to effectively prepare for trial. In its response to the objections, the government states that, at present, it does not anticipate using the informant at trial. If that changes, the government agrees that the informant should be disclosed to the defense on a date certain set by the court prior to trial.

I previously granted the parties' joint request to adjourn the May 21, 2010 final pre-trial and June 1, 2010 trial, which has rendered moot the magistrate judge's specific disclosure order. Both sides seem to agree on the conditions requiring disclosure. I will take this issue up with counsel at the status scheduled for June 22, 2010.

12

## IV.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 17) is adopted, and defendant's motions to dismiss (R. 12) and suppress (R. 11) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 11th day of June, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge